THEODORE WORTH WARD

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, AND GAULEY COAL & COKE COMPANY

(No. 12972)

Submitted September 8, 1970.    Decided September 29, 1970.

*Callaghan & Callaghan, Dan O. Callaghan,* for appellant.

*R. L. Theibert,* for appellees.

CALHOUN, JUDGE:

This workmen's compensation case is before the Court on appeal by the employer, Gauley Coal & Coke Company, from an order of the Workmen's Compensation Appeal Board entered on May 25, 1970, which affirmed an order entered on December 16, 1969, by the State Workmen's Compensation Commissioner, granting the claimant a total permanent disability award.

The claimant sustained a compensable injury to his back on October 18, 1965, while working in a coal mine. His injury was diagnosed by Dr. James Glasscock of Richwood, West Virginia,. as a compression fracture of the first lumbar vertabra.

By a letter dated February 11, 1966, Dr. Glasscock requested that the claimant be referred to an orthopedist for an evaluation of his condition. Pursuant to this request, the commissioner referred the claimant to Dr. E. H. Heilman, an orthopedic surgeon of Charleston, West Virginia, who treated the claimant for several months. Dr. Heilman reported that the claimant had returned to work in June, 1966, for a period of four days, but that he had experienced so much pain he had been forced to cease work.

On July 12, 1966, Dr. Heilman advised Mr. E. L. Wiley, Assistant Director of the Medical Division of the Workmen's Compensation Fund, that, in his opinion, the claimant should be examined by a psychiatrist; that the claimant could go back to work; that the claimant's back was satisfactorily healed; and that the claimant was afraid to return to work because he believed that he would not be able to perform the duties in his former position of employment.

Following the receipt of Dr. Heilman's letter, Mr. Wiley notified the claimant that he was being referred to Dr. Russel Kessel and Dr. W. B. Rossman, both of Charleston, West

Virginia, for examination. Dr. Kessel, by a letter dated August 11, 1966, stated that his examination of the claimant revealed no orthopedic disability as the result of the injury and that the claimant "should be working at this time."

On October 14, 1966, Dr. Rossman, a phychiatrist, admitted the claimant to Highland Hospital at Charleston, West Virginia, for examination and treatment. Dr. Rossman subsequently reported that the claimant's emotional symptoms of depression were related to his back injury and to his long period of idleness. He indicated in his report that the claimant's physical condition would have to improve before he could permit him to return to work and that, unless he could return to some gainful employment soon, the claimant's depression reaction would become chronic.

By a letter dated April 28, 1967, Dr. Rossman stated that he had again examined the claimant and that he was of the opinion that the claimant had reached a maximum degree of recovery from a psychiatric standpoint. Dr. Rossman recommended that a fifteen percent permanent partial disability award be granted for psychiatric disability.

On May 5, 1967, the commissioner entered an order granting the claimant a fifteen percent permanent partial disability award. The claimant protested the award.

In support of the protest, the claimant introduced the medical reports of Dr. W. E. Wilkinson, a psychiatrist of Beckley, West Virginia, and Dr. David Wayne, a psychiatrist of Bluefield, West Virginia, and took their testimony. The claimant also took the testimony of Dr. C. W. Stallard, an orthopedic surgeon of Montgomery, West Virginia.

In his testimony, Dr. Wayne stated that the claimant is totally and permanently disabled from a psychiatric condition which he diagnosed as "conversion reaction, chronic, severe." Dr. Wayne defined the condition as a "response to a life-threatening situation that normally produces severe anxiety. Instead of the anxiety being a symptom the anxiety is converted into some physical type symptom." He testified that

the claimant's symptoms of pain were as real as if they were caused by organic problems and that the symptoms were disabling. In his testimony, Dr. Wayne made the following additional statements:

> "It is my opinion that the symptoms are so well fixed and chronic, that I doubt whether any psychiatric treatment will help; and I don't believe he will be able to work.

> \* \* \*

> "It was my opinion that the precipitating factor in this man's illness was the accident which the patient suffered."

Both Dr. Wilkinson and Dr. Wayne were of the opinion that there was a causal relationship between the trauma and the psychiatric disability. Dr. Wilkinson testified at the protest hearing that "after viewing Dr. Rossman's report and Dr. Wayne's report, I am inclined to feel more strongly there is a relationship between the accident and the mental illness \* \* \*."

Dr. Wilkinson agreed with Dr. Wayne that the claimant is totally and permanently disabled. Dr. Wilkinson diagnosed the claimant's condition as "schizophrenic reaction, severe." In comparing his diagnosis with that of Dr. Wayne, he testified that "very frequently we see people who start off as conversion reaction and de-compensate into a schizophrenic sickness. I thought Mr. Ward had already de-compensated when I saw him." Dr. Wilkinson testified that he could find no evidence of malingering.

Dr. C. W. Stallard testified that his recommendation of a twenty-five percent permanent partial disability award was based solely on the claimant's orthopedic disability and that he also recommended further psychiatric treatment.

Dr. William B. Rossman also testified at the hearing. Prior to being called as a witness, Dr. Rossman reexamined the claimant at the request of the employer. On cross-examination he testified that he found no evidence of malingering; that the claimant's symptoms were genuine; and that his condition was "strictly involuntary" or "totally involuntary."

In the report submitted in addition to his testimony at the hearing, Dr. Rossman concluded: "In April 1967 I recommended he receive 15% permanent partial disability for psychiatric reasons. With the passage of time the amount of secondary pain has increased and his psychiatric disability of course increases with this. Although he has little motivation at this time he is able to work from a physical point of view. He is a victim, as you can well see, of idleness and of fright. His permanent partial disability should undoubtedly be increased. I would make a recommendation that the psychiatric disability be increased to 25% permanent partial disability." A portion of Dr. Rossman's testimony on cross-examination was as follows:

"Q Dr. David Wayne of Bluefield, who specializes in the same field of medicine you do, has made a diagnosis of conversion reaction. Is that a different diagnosis than the diagnosis you made?

"A Just slightly. The difference is that conversion reaction refers to a set of physical symptoms being depicted or displayed by the individual, these symptoms generally having no physical basis.

"Q That is what I understood you to testify earlier on direct examination, that Mr. Ward has a set of symptoms which he relates to back pain, and so forth, and these symptoms are not borne out by any medical evidence of an organic cause.

"A That's right, but it is hair splitting to talk about the differences between conversion reaction and depressive reaction. They are so close; it is just words. You are really just using different words to describe the same situation.

"Q That is what I was trying to get at. You and Dr. Wayne have apparently described the same situation.

"A One man sees it as having predominantly more depressive symptoms and the other sees it as having more physical symptoms.

"Q But both terms are psychoneurosis?

"A That's right."

On December 16, 1969, the commissioner entered an order by which he set aside his previous ruling of May 5, 1967, and granted the claimant a total permanent disability award. By an order dated May 25, 1970, the Workmen's Compensation Appeal Board, with one member dissenting, affirmed the award made by the commissioner.

The three psychiatrists agree that the claimant has a psychiatric condition which resulted from the compensable injury to his back. They apparently agree that there is no evidence of malingering on the part of the claimant. The variance in the testimony of Dr. Wayne and Dr. Wilkinson from the testimony of Dr. Rossman relates primarily to the degree or extent of the psychiatric disability. Dr. Wilkinson and Dr. Wayne agree that, because of the resulting psychiatric condition, the claimant is totally and permanently disabled. The three phychiatrists apparently agree that the psychiatric condition is involuntary.

Apparently the claimant had a satisfactory record of coal mine employment over a long period of years prior to the date he sustained the injury. The record does not disclose that the claimant suffered from any psychiatric disability or lack of motivation to work prior to the date of the injury.

We are of the opinion, from the testimony and medical reports to which we have referred previously, that the variation in the testimony of Dr. Rossman from the testimony of Dr. Wayne and Dr. Wilkinson, concerning the nature and degree of the claimant's psychiatric disability, is somewhat nebulous and not clearly substantial in its tenor and effect. We recognize, of course, that the weight of the proof in any case is not to be measured on the basis of the number of witnesses supporting or opposing a pertinent factual proposition. *Lusher v. Sparks,* 146 W.Va. 795, pt. 5 syl., 122 S.E.2d 609.

We are mindful of the fundamental legal principle that the evidence should be construed liberally in favor of a claimant for workmen's compensation benefits. *Lively v. State Compensation Commissioner,* 113 W.Va. 242, pt. 2 syl., 167 S.E. 583; *Fulk v. State Compensation Commissioner,* 112 W.Va. 555, 166 S.E. 5. An award of permanent partial disability benefits is

justified in a case in which a compensable injury causes a psychiatric disability. *Sisk v. State Workmen's Compensation Commissioner*, 153 W.Va. 461, 170 S.E.2d 20; *Bare v. State Compensation Director*, 148 W.Va. 760, 137 S.E.2d 435.

The appeal board, in affirming the order of the commissioner, has made a factual determination that the claimant has sustained a total permanent disability as a consequence of the compensable injury. From the record before us, we are of the opinion that the ruling of the appeal board was justified, not clearly wrong, and, therefore, the order of the appeal board is affirmed. *Pennington v. State Workmen's Compensation Commissioner*, 154 W.Va. 378, 175 S.E.2d 440; *Richardson v. State Compensation Commissioner*, 153 W.Va. 454, pt. 3 syl., 170 S.E.2d 221; *Burr v. State Compensation Commissioner*, 148 W.Va. 17, pt. 4 syl., 132 S.E.2d 636.

This decision will be certified to the Workmen's Compensation Appeal Board and to the State Workmen's Compensation Commissioner.

*Affirmed.*